IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **PRODIGY DISC, INC.,** | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | )   **CIVIL ACTION**<br>) |
| | )   **FILE NO.**<br>) |
| **G.B., a Minor, by and through Michelle Nesheim, his Legal Guardian,** | )<br>)   **JURY TRIAL DEMANDED**<br>) |
| **Defendant.** | )<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff PRODIGY DISC, INC. ("PDI") brings this action for injunctive relief and other relief against G.B., a Minor ("G.B."),[1] by and through Michelle Nesheim, his Legal Guardian.

### PARTIES, JURISDICTION, AND VENUE

1.

PDI is a Georgia corporation that maintains its principal place of business in Dalton, Georgia.

---

[1] Although G.B. is a public figure, PDI is redacting his name in accordance with the Court's Local Rules. *See* L.R. App. H § (I)(1).

1

2.

Because PDI is incorporated in Georgia and maintains its principal place of business in Georgia, PDI is deemed a citizen of only Georgia for the purpose of determining whether the diversity requirements of federal subject matter jurisdiction are satisfied.

3.

G.B., a minor individual, is a resident and citizen of Iowa who intends to remain there indefinitely.  G.B. may be served through his legal guardian, Michelle Nesheim, who is also a resident and citizen of Iowa, at their residence in Urbandale, Iowa, or wherever she may be found.

4.

Because G.B. is domiciled in Iowa, he is a citizen of only Iowa for the purpose of determining whether the diversity requirements of federal subject matter jurisdiction are satisfied.

5.

Because PDI is a citizen of Georgia and G.B. is a citizen of Iowa, complete diversity of citizenship exists between PDI and G.B..

6.

The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

7.

Because complete diversity of citizenship exists between PDI and G.B. and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

8.

Venue is proper in this District and Division pursuant to the mandatory forum selection clause agreed to by PDI and G.B., which provides that "[t]he federal and state courts sitting in Woodstock, Georgia, U.S.A. shall have proper and exclusive jurisdiction and venue with respect to any disputes arising from or related to the subject matter of this Agreement."

**FACTUAL ALLEGATIONS**

9.

Disc golf is presently one of the fastest growing sports in the United States. The sport is similar to conventional golf in many respects, but played with thrown discs to a basket instead of clubs and balls to a hole. Instead of having clubs with

different lengths and lofts, players use different weighted and styled discs depending on their needs for distance and accuracy for a particular shot.

10.

Disc golf has a world governing body, the Professional Disc Golf Association ("PDGA"), as well as a professional tour, the Disc Golf Pro Tour ("DGPT").

11.

Plaintiff PDI is one of the top manufacturers of golf discs and related products in the country. Along with golf discs, PDI sells towels, bags, markers, and apparel engineered to meet the technical needs of disc golfers.

12.

As with most sports, the equipment and clothing used and worn by the professional stars of the sport is an important part of promotion and marketing for the manufacturers of those items, and disc golf is no exception.

13.

To promote its products, PDI engages with several professional disc golfers to market, distribute, and endorse PDI branded goods. Currently, PDI's core roster of sponsored athletes consists of 10 disc golfers that compete in DGPT events across the country. The DGPT season typically commences at the end of February and culminates in the DGPT Championship in October.

14.

Defendant G.B. is one of the professional disc golfers sponsored by PDI. G.B. is currently ranked as the fourth best disc golfer in the world, according to the PDGA's U.S. Tour Rankings. Most recently, G.B. won the United States Disc Golf Championship in October 2022 and was named the DGPT Most Improved Player.

15.

G.B. has been exclusively sponsored by PDI since 2016, when G.B. was eleven years old. G.B. and his mother, Ms. Nesheim, have had a long and successful relationship throughout G.B.'s competitive disc golf career in which PDI has supported him every step of the way.

16.

On January 1, 2022, PDI and G.B. formalized their relationship with a new agreement that compensated G.B. for his endorsement of PDI (the "Endorsement Agreement"). This agreement provided for the terms of an exclusive relationship between G.B. and PDI whereby G.B. granted PDI the exclusive right and license to use G.B.'s name, image, and likeness in conjunction with the promotion and sale of PDI's products in exchange for agreed upon compensation. A true and correct copy of a redacted version of the Endorsement Agreement is attached to the Declaration of Mark Anderson, filed herewith, as **Exhibit 1**.

17.

The term of the Endorsement Agreement spans from January 1, 2022 through December 31, 2023.  The Endorsement Agreement is substantially similar to past agreements between the parties, but provides for an increased compensation to G.B. for the Athlete Endorsement.  As defined in the Endorsement Agreement, Athlete Endorsement shall mean and refer to, "all personal attributes of the Athlete, including without limitation the Athlete's name, nick-name, initials, autograph, facsimile signature, voice or film portrayals, photographs, likeness and image or facsimile image, and any other means of endorsement or identification by the Athlete reasonably requested by PDI."

18.

The Endorsement Agreement is exclusive in that the Athlete Endorsement vested solely in PDI, and G.B. was not and is not permitted to grant his endorsement to any other person or entity that is a competitor of PDI.  G.B. agreed to only use PDI products in any disc golf tournaments or promotional appearances and agreed not to promote, endorse, or advertise products manufactured by PDI's competitors. Additionally, G.B. and his agents and representatives are not to disclose the terms of the Endorsement Agreement to any third parties.

19.

After executing the Endorsement Agreement, the parties enjoyed a successful and mutually beneficial relationship throughout the 2022 professional disc golf season. G.B. achieved great success in his competitive events, which produced increased exposure for PDI's brand.

20.

However, in or about November 2022, Nesheim contacted PDI and inquired whether PDI would agree to release G.B. from his contract. This request came completely unprovoked. Prior to this inquiry, PDI was wholly unaware of any issues Nesheim or G.B. had with the terms of the Endorsement Agreement.

21.

Although PDI would not agree to simply terminate the Endorsement Agreement, its representatives expressed that they would be interested in discussing a renegotiation of terms with G.B. that would include an extension of the parties' relationship and a significant increase in G.B.'s compensation.

22.

Despite expressing interest to pay G.B. additional compensation heading into the 2023 season, he and his mother seemed uninterested in negotiating an extension

with PDI. Instead, the parties agreed to leave their relationship as is and play out the 2023 season.

23.

Unfortunately, G.B. and his mother changed their minds at the beginning of this year and opted to take an aggressive approach at forcing a change. On January 13, 2023, G.B. emailed Michael Sullivan, the Executive Chairman of PDI, and presented what G.B. contended to be Material Breaches[2] of the Endorsement Agreement (the "Termination Notice"). G.B.'s email stated that PDI had 30 days from the date of his message to cure the alleged breaches; otherwise, he would terminate the Endorsement Agreement. A true and correct copy of a redacted version of the Termination Notice is attached to the Declaration of Mark Anderson, filed herewith, as **Exhibit 2**.

24.

Even after receiving the Termination Notice, PDI made significant efforts to placate G.B. and his mother to maintain the parties' working relationship. PDI asked

---

[2] Material Breach is defined in the Endorsement Agreement as, "without limitation, non-payment of compensation by PDI, Athlete's failure to provide any of the endorsement services set forth hereunder, either party's failure to fulfill any of its obligations hereunder, Athlete's commission of any criminal act, and Athlete's commission of any act which shocks or offends the community or which manifests contempt or disregard for public morals and decency."

G.B. what he was seeking in terms of renewed compensation, and PDI went to considerable lengths to make an offer that could accommodate G.B.'s request. After making a proposal that included a compensation package that would approximately quadruple G.B.'s compensation under the current terms, G.B. and Nesheim requested a couple days to consider the offer.

25.

During the discussions between PDI, G.B., and Nesheim, PDI and its representatives began receiving information from others in the professional disc golf industry that G.B. and/or Nesheim were engaged in conversations with other disc golf manufacturers regarding endorsement agreements with PDI's competitors. It was unclear from this information whether PDI's competitors were contacting G.B. and Nesheim, or vice versa.

26.

After receiving the Termination Notice, PDI's representatives continued trying to discuss a renegotiation of the terms of the Endorsement Agreement, but regardless of the terms provided by PDI, G.B. only feigned interest in these discussions.

27.

Seeing G.B. was unphased by the generous offers presented by PDI, PDI's counsel responded to the Termination Notice, addressing the issues raised by either illustrating that said matters did not constitute a Material Breach or establishing that said breaches had been cured by PDI.

28.

G.B. and Nesheim, undeterred by PDI's response, engaged counsel to respond to PDI on February 13, 2023, stating that "Mr. [G.B.] is terminating his [Endorsement Agreement] with PDI effective immediately." (the "February 13 Termination"). Furthermore, the February 13 Termination stated that G.B. intended to publicly announce his termination of the Endorsement Agreement that same day. A true and correct copy of a redacted version of the February 13 Termination is attached to the Declaration of Mark Anderson, filed herewith, as **Exhibit 4**.

29.

Sure enough, on February 13, 2023, G.B. posted a video on his Instagram page announcing he is leaving Team Prodigy. G.B.'s announcement has caused a significant stir in the disc golf world, including many pundits speculating that PDI could not match offers made by its competitors to retain G.B. Others made

comments that G.B.'s departure would essentially amount to the end of PDI's business.

30.

The Endorsement Agreement specifically provides PDI with an opportunity to match any offer competitive to the Endorsement Agreement G.B. receives during the contract and for 180 days thereafter. This provision requires G.B. to submit in writing to PDI any specific terms of the offer, after which PDI will have ten business days to notify G.B. if it will enter into a new contract with G.B. on terms no less favorable of the competing offer.

31.

To date, PDI has received no such notice from G.B. of any third party offers. However, with the beginning of the disc golf season imminently approaching, PDI fears G.B. intends to proceed with entering into a new endorsement agreement with one of its competitors while ignoring PDI's position that the February 13 Termination is unfounded and disregarding PDI's right of first refusal. This fear is exacerbated by the February 13 Termination, which added, "While Mr. [G.B.] has not signed with another disc golf company yet, this provision negates any need to provide PDI with any future contract offers Mr. [G.B.] received because the

[Endorsement Agreement] with PDI already terminated." (*See* Ex. 3 to Declaration of Mark Anderson).

32.

Since the beginning of 2023, PDI has already paid G.B. all of the financial compensation he is currently due under the terms of the Endorsement Agreement. PDI has been damaged by G.B.'s conduct and decision to unilaterally terminate the Endorsement Agreement despite no material breach occurring. The current injury already suffered by PDI is nominal compared to what future damage may arise if G.B. elects to continue to disregard his duties under the Endorsement Agreement and will result in irreparable injury should G.B. sign an endorsement agreement with any of PDI's competitors while still under contract with PDI.

33.

Furthermore, PDI allocated significant resources towards G.B. in the hopes of resigning him to a new deal. This meant PDI was forced to forego opportunities to work with other professional disc golfers interested in signing with PDI. Knowing that G.B. required a significant amount of capital, PDI could not sign these other athletes. Now, with the season about to commence, these other athletes entered deals with PDI's competitors, resulting in a severely detrimental impact to PDI's revenue this year.

34.

PDI has fully complied with all of its obligations under the Endorsement Agreement and has not committed any Material Breach. Assuming *arguendo* that any Material Breach has occurred, however, PDI has cured any alleged breach. Accordingly, G.B.'s attempted termination of the Endorsement Agreement is void and of no force and effect.

## COUNT I
## Breach of Contract

35.

PDI re-alleges and incorporates by reference the allegations in paragraphs 1 through 34 as if fully set forth herein.

36.

The Endorsement Agreement, which specifically provides that it shall be "governed by the laws of the State of Georgia," is a valid and enforceable contract under Georgia law.

37.

As a party to the Endorsement Agreement, PDI has a right to complain that it was breached.

38.

Pursuant to the Endorsement Agreement, G.B. was prohibited from terminating the Endorsement Agreement for cause unless PDI materially breached the Endorsement Agreement and PDI failed to cure any alleged material breaches within 30 days.

39.

PDI has not materially breached the Endorsement Agreement. To the contrary, PDI has fully performed its obligations under the Endorsement Agreement.

40.

To the extent PDI has breached the Endorsement Agreement, such breaches were not Material Breaches, as that term is defined in the Endorsement Agreement.

41.

To the extent PDI materially breached the Endorsement Agreement, PDI has cured such breaches.

42.

Accordingly, G.B. breached the Endorsement Agreement by attempting to terminate the Endorsement Agreement on February 13, 2023.

43.

G.B.'s attempted termination of the Endorsement Agreement constitutes a material breach of the Endorsement Agreement. Additionally, G.B. has made it clear that he has no intention of further performing his endorsement obligations under the Endorsement Agreement and has thus anticipatorily breached the agreement.

44.

As a direct, proximate, and foreseeable result of G.B.'s material breach, PDI has suffered and will continue to suffer damages for which G.B. is liable in an amount to be proven at trial.

45.

PDI has shown a substantial likelihood of success on the merits of this claim.

46.

Absent injunctive relief, PDI will suffer irreparable injury as a result of G.B.'s attempted termination of the Endorsement Agreement.

47.

The full extent of damage to PDI from G.B.'s breach of the Endorsement Agreement will be difficult if not impossible to prove, so monetary damages alone will not be a sufficient remedy for G.B.'s breach.

48.

The threatened injury to PDI stemming from G.B.'s attempted termination of the Endorsement Agreement outweighs any harm G.B. would suffer as a result of temporary and permanent injunctive relief.

49.

Temporary and permanent injunctive relief would promote fair competition and serve the public interest.

50.

PDI is entitled to temporary and permanent injunctive relief requiring G.B. to specifically perform his obligations under the contract and prohibiting him from granting the Athlete Endorsement, as that term is defined in the Endorsement Agreement, or any endorsement similar thereto, to any other person or entity that is a competitor of PDI or works in the disc golf industry during the term of the Endorsement Agreement, which runs through December 31, 2023.

## COUNT II
### Attorneys' Fees under the Endorsement Agreement

51.

PDI re-alleges and incorporates by reference the allegations in paragraphs 1 through 34 as if fully set forth herein.

52.

The Endorsement Agreement specifically provides that the prevailing party in any dispute arising from or related to the subject matter of the Endorsement Agreement shall be entitled to recover its legal costs including, without limitation, attorneys' fees.

53.

PDI has initiated this action to enforce its rights under the Endorsement Agreement. Accordingly, it is entitled to recover its costs, including attorneys' fees, associated with this action.

## COUNT III
### Attorneys' Fees pursuant to O.C.G.A. § 13-6-11 (Alternative Count)

54.

PDI re-alleges and incorporates by reference the allegations in paragraphs 1 through 34 as if fully set forth herein.

55.

G.B. has acted in bad faith, has been stubbornly litigious, and has caused PDI unnecessary trouble and expense.

56.

Accordingly, PDI is entitled to recover its attorneys' fees and costs of litigation under O.C.G.A. § 13-6-11.

WHEREFORE, PDI respectfully requests the following relief:

(a) a temporary restraining order and preliminary injunction ordering G.B. to comply with his obligations under the Endorsement Agreement and prohibiting him from granting the Athlete Endorsement, as that term is defined in the Endorsement Agreement, or any endorsement similar thereto, to any other person or entity that is a competitor of PDI or works in the disc golf industry during the term of the Endorsement Agreement, which runs through December 31, 2023;

(b) a temporary restraining order and preliminary injunction prohibiting G.B. from promoting, endorsing, or advertising any products manufactured by PDI's competitors that compete with the products manufactured, imported, and/or distributed by PDI and its affiliates during the term of the Endorsement Agreement, which runs through December 31, 2023;

(c) compensatory damages in an amount to be proven at trial;

(d) permanent injunctive relief;

(e) reasonable attorneys' fees, costs, and other expenses;

(f) that PDI have a trial by jury on all issues so triable; and

  (g) for such other and further relief for Plaintiff as the Court deems just and equitable.

Respectfully submitted, this 15th day of February, 2023.

            */s/ William C. Collins, Jr.*
            William C. Collins, Jr.
            Georgia Bar No. 178847
            wcollins@burr.com
            Joseph H. Stuhrenberg
            Georgia Bar No. 398537
            jstuhrenberg@burr.com

            *Counsel for Plaintiff PRODIGY DISC, INC.*

**BURR & FORMAN LLP**
171 Seventeenth Street, NW
Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244