IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **PRODIGY DISC, INC.,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION** |
| ) | |
| ) | **FILE NO.** |
| **G.B., a Minor, by and through** ) | |
| **Michelle Nesheim, his Legal** ) | **JURY TRIAL DEMANDED** |
| **Guardian,** ) | |
| ) | |
|     **Defendant.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND A HEARING**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Local Rules 65.1 and 65.2, and other applicable law, Plaintiff PRODIGY DISC, INC. ("PDI") respectfully requests that the Court enter a temporary restraining order and preliminary injunction against Defendant G.B. ("G.B.").[1]  PDI further requests that the Court grant the relief requested herein or hold an expedited hearing on this Motion as soon as possible, as PDI faces the prospect of irreparable, incalculable,

---

[1] Although G.B. is a public figure, PDI is redacting his name in accordance with the Court's Local Rules.  *See* L.R. App. H § (I)(1).

1

and irreversible harm *as soon as tomorrow, February 16, 2023*. Preserving the status quo is therefore essential.

## PRELIMINARY STATEMENT

Plaintiff PDI manufactures and sells equipment used in the fast-growing sport of disc golf. At just 17 years old, Defendant G.B. is one of the top disc golfers in the world. PDI has been G.B.'s exclusive sponsor since 2016, and the two have enjoyed a successful relationship throughout. In recent months, however, G.B. has failed to honor his contractual obligations to PDI. On February 13, 2023, G.B. notified PDI that he was terminating their relationship and—that same day—announced to his 36,0000+ Instagram followers that he would be ending his relationship with PDI. G.B.'s announcement has sent shockwaves throughout the professional disc golf community and fan base and has put PDI's business and good name on the line.

Without an immediate order from the Court ordering G.B. to fulfill his obligations to PDI, PDI will suffer irreparable, incalculable, and irreversible harm. G.B. is set to compete at a major disc golf event *this weekend* in Tucson, Arizona that is expected to be streamed by over 1 million viewers worldwide. Further, there is a press conference associated with the event scheduled for *tomorrow* at which the disc golf world expects G.B. to announce a sponsorship agreement with one of PDI's

competitors. Such an announcement by G.B. would be a clear violation of G.B.'s exclusive endorsement agreement with PDI and utterly devastating to PDI's business.

## I.   FACTUAL BACKGROUND

PDI is considered one of the top manufacturers of disc golf equipment in the country. To promote its products, PDI engages with professional disc golfers to market, distribute, and endorse PDI products. (Anderson ¶¶ 7–9).[2] Since 2016, PDI has been G.B.'s exclusive sponsor. At just 17 years old, G.B. is currently ranked as the fourth best disc golfer in the world. (*See* Professional Disc Golf Association United States Tour Rankings, *available at* https://www.pdga.com/united-states-tour-ranking (last visited Feb. 14, 2023)).

Since 2016, PDI and G.B. (along with G.B.'s mother, Michelle Nesheim) have enjoyed an incredibly successful relationship. Just last year, PDI and G.B. negotiated a new agreement that compensated G.B. for his endorsement of PDI (the "Endorsement Agreement"). (Anderson ¶¶ 15–16). Like previous agreements between PDI and G.B., the Endorsement Agreement provided for an exclusive relationship whereby G.B. granted PDI—and *only* PDI—the right and license to use

---

[2] Citations to "Anderson" are to the Declaration of Mark Anderson, PDI's CEO, filed concurrently herewith.

his name, image, and likeness in connection with the promotion and sale of PDI products. (*Id.*).

After finalizing the Endorsement Agreement, PDI and G.B. enjoyed a successful and mutually beneficial relationship throughout the 2022 professional disc golf season, which culminated in G.B. becoming the youngest player ever to win the United States Disc Golf Championship, "the equivalent of a professional golfer winning the US Open." ([*G.B.*] *wins US Disc Golf Championship*, *available at* https://tinyurl.com/36upjhta (last visited Feb. 15, 2023)).

Unfortunately, things changed shortly after the 2022 season ended. In November 2022, Nesheim reached out to PDI and asked whether PDI would consider releasing G.B. from the Endorsement Agreement. (Anderson ¶ 19). Although PDI declined to simply terminate the Endorsement Agreement, PDI expressed its willingness to negotiate a restructured contract that would account for G.B.'s record-breaking 2022 season. (*Id.* ¶ 21). But it soon became clear to PDI that G.B. had no real interest in negotiating with PDI. Thus, the parties agreed to leave their relationship as is for the 2023 season, which begins later this month, and then re-assess later this year.

Ultimately, it appears G.B. never intended to play out the 2023 season under the Endorsement Agreement. On January 13, 2023, G.B. emailed a PDI executive

and outlined what he contended to be multiple material breaches of the Endorsement Agreement. (Anderson, Ex. 2) G.B.'s email further stated that PDI had 30 days to cure the alleged material breaches and that if PDI failed to do so, G.B. would terminate the Endorsement Agreement. PDI responded to G.B.'s email on February 7, 2023 and pointed out that it was not in material breach and that it would not accept a termination of the agreement. (Anderson, Ex. 3).

Even after receiving G.B.'s January 13 email, PDI went to great lengths to accommodate G.B. and negotiate a contract extension. At one point, PDI proposed a contract extension that would *quadruple* G.B.'s compensation. (Anderson ¶ 28). But G.B. never truly engaged with PDI and, on February 13, 2023, told PDI that he was terminating the Endorsement Agreement effective immediately. (*Id.*, Ex. 4). Later that day, G.B. announced to his 36,000+ Instagram followers that he had ended his relationship with PDI, an announcement that has garnered significant attention in pro disc golf circles. (*See, e.g.*, [*G.B.*] *Announces Departure from Prodigy Sponsorship*, Ultiworld Disc Golf, *available at* https://tinyurl.com/58ek5djb (last

visited Feb. 15, 2023);[3] "Thank You Prodigy," *available at* https://www.youtube.com/watch?v=tnKCEQAOnF4 (last visited Feb. 14, 2023)).

G.B.'s announcement has already been devastating to PDI's business, and many people are already speculating which of PDI's competitors G.B. will turn to for his next sponsorship agreement. Should G.B. announce his next move at or before this weekend's highly anticipated event in Arizona, PDI's business may never recover, even with an award of damages stemming from G.B.'s unlawful unilateral termination of the Endorsement Agreement.

PDI has fully complied with all of its obligations under the Endorsement Agreement and is not in Material Breach. To the extent any Material Breach has even arguably occurred, PDI has timely cured it.

## II.   ARGUMENT

Temporary injunctive relief to preserve the status quo is appropriate where the ordinary standards for the issuance of preliminary injunctive relief are satisfied. *United States v. Alabama*, 791 F.2d 1450, 1459 (11th Cir. 1986) ("The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's

---

[3] One individual left a comment on this news report that reads: "Let's go! Cant wait to see the contract details to see what this 17 yr old prodigy will be earning!" Another commented, "Wow !! That's a serious hit to [PDI]."

ability to render a meaningful decision on the merits."). A TRO may be entered in advance of a full hearing when a plaintiff will suffer immediate and irreparable injury, loss, or damage before it is possible for the defendant to be heard in opposition to the plaintiff's motion for preliminary injunction. Fed. R. Civ. P. 65; *CCA & B, LLC v. Angels_Masks*, No. 1:20-CV-04756-JPB, 2020 WL 10087789, at *1 (N.D. Ga. Dec. 4, 2020).

"To support a preliminary injunction [or TRO], a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Instead, a district court may issue a TRO or preliminary injunction when the moving party demonstrates: (A) a substantial likelihood of success on the merits; (B) that irreparable injury will be suffered unless the injunction issues; (C) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (D) if issued, the injunction would not be adverse to the public interest. *See, e.g.*, *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003); *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000). PDI meets this standard and is entitled to injunctive relief to preserve the status quo.

### A.     <u>There is a Substantial Likelihood that PDI Will Prevail on the Merits.</u>

PDI's primary substantive claim is for breach of the Endorsement Agreement (Count I). "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014) (citations and internal quotation marks omitted);[4] *see also* O.C.G.A. § 13-6-1 ("Damages are given as compensation for the injury sustained as a result of the breach of a contract."). There is a substantial likelihood that PDI will succeed on this claim because it has shown that G.B. breached his obligations under the Endorsement Agreement by impermissibly and unilaterally terminating it.

G.B.'s pretext for terminating the Endorsement Agreement centers around what he contends to be five purported material breaches of the Endorsement Agreement. However, as demonstrated in the Declaration of Mark Anderson, filed herewith and summarized below, none of G.B.'s complaints rise to the level of a material breach. Even if they did, PDI has cured them.

---

[4] Unless noted otherwise, PDI has omitted all citations and internal quotation marks.

First, G.B. complains that he should have received a disc celebrating his 2021 PDGA Rookie of the Year Award.⁵ The fact is that PDI made not one, but two, discs commemorating G.B.'s Rookie of the Year award. (Anderson ¶¶ 35–37). Both discs bear G.B.'s signature and clearly identify him as the 2021 PDGA Rookie of the Year, and both are publicly available on PDI's website to this day. This alleged material breach is no breach at all, especially considering the fact that PDI was never obligated to create a commemorative disc in the first place. (*Id.* ¶ 38).

Second, G.B. complains that he and Nesheim were told they would be able to view "regular sales reports" of his disc sales to reconcile with the commissions that PDI pays him. (Anderson, Ex. 2). Put simply, the Endorsement Agreement says ***nothing*** about G.B. and/or Nesheim's ability to view "sales reports." Again, this alleged material breach is no breach at all.

Third, G.B. complains that PDI did not give him sufficient input in choosing and/or designing the "signature" disc that PDI made for him.⁶ G.B.'s own words indicate otherwise. He repeatedly told PDI executives just how pleased he was with

---

⁵ G.B. complains about PDI's conduct "[i]n late November and early December 2021," but the Endorsement Agreement did not even become effective until January 1, 2022. (Anderson, Exs. 1 and 2).

⁶ Once again, G.B. complains about conduct that occurred "throughout November 2021," before the Endorsement Agreement became effective. (Anderson, Ex. 2).

his signature disc, at one point telling PDI's Executive Chairman that the D1, his signature disc, was "perfect." (Anderson, Ex. 6). G.B.'s clear satisfaction aside, G.B. has not pointed to any provision of the Endorsement Agreement that entitled him to an "opportunity to choose which disc [he] preferred." (*Id.*, Ex. 2). Once again, this alleged material breach is no breach at all.

Fourth, G.B. complains about the purportedly deficient quality of PDI's products. From 2016 through the end of 2022, G.B. never once complained to PDI about the quality of PDI's products. (Anderson ¶¶ 42–43). Quite the opposite. And if he truly had concerns "[a]s far back as June 2021" with the quality of PDI's products, then it is hard to imagine why he would agree to a contract extension with PDI in January 2022. (*Id.*, Ex. 2). The fact is that G.B. only began to complain about PDI's products once he and Nesheim began to express interest in terminating the Endorsement Agreement. This is no coincidence, and only confirms that G.B.'s complaints are a mere cover story for terminating the Endorsement Agreement. Further, while PDI stands by the quality of its products, the Endorsement Agreement does not grant G.B. the right to terminate it based on fictitious product-quality concerns.

Fifth, G.B. complains that PDI failed to pay him $500 in bonuses. Of all the "breaches" alleged by G.B., this is the only one that could possibly be characterized

as a breach. Nevertheless, even assuming that it were a material breach of the Endorsement Agreement (which is debatable but at this point irrelevant), PDI cured it by paying G.B. the $500 on January 30, 2023, well within the 30-day window to cure any alleged breaches. G.B., through counsel, has admitted just as much. (Anderson, Ex. 4, p. 5).

In short, PDI has not materially breached the Endorsement Agreement—a prerequisite for G.B. to unilaterally terminate it for cause. And even if PDI had materially breached the Endorsement Agreement by not paying G.B. $500 in bonus money, that breach was cured. Thus, G.B. was not entitled to terminate the Endorsement Agreement and PDI is substantially likely to prevail on its breach of contract claim that is based on G.B.'s unilateral and impermissible termination.

There can be no dispute that PDI has been significantly damaged by G.B.'s breach. PDI has already paid G.B. all of the compensation he is due under the Endorsement Agreement, which pursuant to its terms, runs through the end of the year. PDI's damages will only worsen if, as expected, G.B. announces in the coming days that he has agreed to an exclusive sponsorship agreement with one of PDI's competitors. (*See* Anderson, Ex. 5, p. 10 ("You think [G.B. would] leave without already having a sponsor lined up? I mean it's possible but I don't think he'd just go out on his own without one, so I'd assume he'd have a sponsor before then." . . .

"He probably has something lined up but finalizing contracts and whatnot takes time . . .")).

Moreover, PDI has been damaged because it bypassed opportunities with other pro disc golfers under the assumption that G.B. would play the 2023 season under the Endorsement Agreement (like he said he would). (Anderson ¶ 53). For all these reasons, PDI is substantially likely to prevail on its breach of contract claim.

### B. PDI Will Suffer Irreparable Injury without Injunctive Relief.

PDI will be irreparably harmed if G.B. is allowed to proceed with his termination of the Endorsement Agreement and what the disc golf world expects will be his signing with one of PDI's competitors. PDI has spent years cultivating its relationship with G.B. and, in the process, has built up a considerable amount of goodwill in the marketplace. All of that would be destroyed if G.B. jumps ship to one of PDI's competitors. *See Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (noting that the loss of goodwill is "irreparable" injury); *Variable Annuity Life Ins. Co. v. Joiner*, 454 F. Supp. 2d 1297, 1304 (S.D. Ga. 2006) ("[R]esulting harm from lost accounts and lost customer goodwill and business is irreparable because it is neither easily calculable, nor easily compensable and is, therefore, an appropriate basis for injunctive relief."). It is not an exaggeration to state that PDI's 2023 revenue would be decimated without G.B.. (Anderson ¶¶ 52–

55). The Court need not take PDI's word for it; pro disc golf followers are already saying it themselves. (*See* Anderson, Ex. 5, p. 8 ("Begs the question, do[es PDI] even have a future?" . . . "Who knows. I could honestly see them gone in a few years . . ."). One Instagram user accurately captured the harm to PDI's business in this photo-shopped version of a popular "meme" that portrays G.B. standing over PDI's "grave:"



Another Instagram user shared a meme that portrays G.B. looking into a camera while PDI erupts in flames in the background:



Put simply, the public—and specifically, pro disc golf followers—clearly understands that G.B.'s departure from PDI poses an existential threat to PDI's business.

C. **The Threatened Injury to PDI Outweighs the Harm of Temporary Injunctive Relief to G.B.**

The balance of the equities strongly favors PDI. If G.B. is allowed to unilaterally and unlawfully terminate the Endorsement Agreement and then sign with one of PDI's competitors, PDI's business will be on the brink (to the extent it is not already). On the other hand, G.B. "cannot suffer compensable harm when

enjoined from an unlawful activity." *Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.*, 793 F. Supp. 2d 1302, 1314 (N.D. Ga. 2011). To the extent G.B. is "harmed," he has brought any alleged harm upon himself by knowingly breaching his contractual obligations to PDI. If G.B. recants his attempted termination and resumes performing under the Endorsement Agreement, he will continue to receive the lucrative compensation for which he contracted with PDI.

### D. **Temporary Injunctive Relief Would Serve the Public Interest.**

The public interest favors granting temporary injunctive relief because there is a strong public interest in promoting *fair* competition, and allowing G.B. to breach his contract with PDI and then sign with a competitor—all in the span of a week—would be anything but fair. *See MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1243 (11th Cir. 2005) ("Loss of business due to free and fair competition is not a harm; violation of legal rules designed to promote such competition is a harm."). PDI backed G.B. long before he rose to the top of the sport and has stuck with him every step of the way. (Anderson ¶ 10). If G.B. wishes to sign with one of PDI's competitors after his current contract expires, then he is certainly free to do so. But the Court should not sit idly by and allow G.B. to publicly humiliate PDI and decimate its business in the manner that he seeks to do now.

### III. CONCLUSION

For all the reasons set forth herein and in PDI's Complaint, PDI respectfully requests that the Court grant the following relief:

(a) entry of a temporary restraining order and preliminary injunction ordering G.B. to comply with his obligations under the Endorsement Agreement and prohibiting him from granting the Athlete Endorsement, as that term is defined in the Endorsement Agreement, or any endorsement similar thereto, to any other person or entity that is a competitor of PDI or works in the disc golf industry during the term of the Endorsement Agreement, which runs through December 31, 2023;

(b) entry of a temporary restraining order and preliminary injunction prohibiting G.B. from promoting, endorsing, or advertising any products manufactured by PDI's competitors that compete with the products manufactured, imported and/or distributed by PDI and its

    affiliates during the term of the Endorsement Agreement, which runs through December 31, 2023; and

(c)   waiver of Local Rule 7.1's time requirements and either immediately grant the relief requested herein or hold a hearing on this Motion as soon as possible.

Respectfully submitted, this 15th day of February, 2023.

                                            */s/ William C. Collins, Jr.*
                                            William C. Collins, Jr.
                                            Georgia Bar No. 178847
                                            wcollins@burr.com
                                            Joseph H. Stuhrenberg
                                            Georgia Bar No. 398537
                                            jstuhrenberg@burr.com

                                            *Counsel for Plaintiff PRODIGY DISC, INC.*

**BURR & FORMAN LLP**
171 Seventeenth Street, NW
Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

## CERTIFICATION OF COUNSEL

I hereby certify that the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND A HEARING** has been prepared with Times New Roman, 14-point font, one of the font and point selections approved by the Court in LR 5.1(C).

/s/ William C. Collins, Jr.
William C. Collins, Jr.
Georgia Bar No. 178847
wcollins@burr.com

*Counsel for Plaintiff PRODIGY DISC, INC.*

**BURR & FORMAN LLP**
171 Seventeenth Street, NW
Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2023, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND A HEARING** with the Clerk of Court using the CM/ECF system and have served a copy of same on Defendant's representative, listed below, via electronic mail and the United States Postal Service, postage prepaid, addressed as follows:

Bryan W. Gort
PARKER MACINTYRE
2987 Clairmont Road
Suite 200
Atlanta, Georgia 30329
bgort@parkmac.com

*/s/ William C. Collins, Jr.*
William C. Collins, Jr.
Georgia Bar No. 178847
wcollins@burr.com

*Counsel for Plaintiff PRODIGY DISC, INC.*

**BURR & FORMAN LLP**
171 Seventeenth Street, NW
Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244